Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| PHALANX CAPITAL SERIES 20 REAL ESTATE LLC<br><br>Recurridos<br><br>V.<br><br>MARÍA EMPERATRIZ MORÁN LANTIGUA, **BLASINA MESA SÁNCHEZ**, FULANO DE TAL COMO POSIBLE HEREDERO DESCONOCIDO DE LA SUCESIÓN DE MARÍA EMPERATRIZ MORÁN LANTIGUA Y OTROS<br><br>Peticionaria | KLCE202500361 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2020CV01080<br><br>Sobre: Cobro de Dinero – Ordinario, Ejecución de Hipoteca: Propiedad Residencial |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## RESOLUCION

En San Juan, Puerto Rico, a 6 de mayo de 2025.

El 9 de abril de 2025, compareció ante este Tribunal de Apelaciones, la señora Blasina Mesa Sánchez (en adelante, parte peticionaria o señora Mesa Sánchez) por medio de *Certiorari*. Mediante su recurso, nos solicita que revisemos la *Resolución Interlocutoria* emitida el 20 de febrero de 2025, notificada al próximo día, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. En virtud del referido dictamen, el foro primario declaró *No Ha Lugar* la solicitud de relevo de sentencia presentada por la peticionaria.

Por los fundamentos que adelante se exponen, se *deniega* la expedición del recurso de *Certiorari*.

Número Identificador

RES2025 _____

**I**

Como cuestión de umbral, advertimos que esta es la tercera ocasión en que las partes comparecen ante esta segunda instancia judicial dentro del mismo pleito.[1] De modo que, adoptamos por referencia el trámite procesal del caso plasmado en nuestros dictámenes previos y nos circunscribimos a reseñar las incidencias procesales estrictamente pertinentes a la controversia que nos ocupa.

A modo de resumen, el recurso de marras tiene su génesis en una *Demanda* sobre cobro de dinero y ejecución de hipoteca, instada el 28 de febrero de 2020, por Oriental Bank (en adelante, Oriental) en contra de la señora María Emperatriz Moran Lantigua (en adelante, señora Morán Lantigua).[2] Más adelante, el 7 de mayo de 2020, Oriental presentó una *Demanda Enmendada*, a los fines de incluir como parte demandada a la señora Mesa Sánchez, quien había adquirido la propiedad objeto de controversia.[3]

Tras un sin número de trámites procesales innecesarios pormenorizar, el 21 de abril de 2022, Oriental presentó una solicitud de sustitución, a los fines de sustituir a la parte demandante por San Carlos Mortgage LLC (en adelante, San Carlos).[4] Esto pues, según adujo, el préstamo objeto de ejecución había sido transferido a San Carlos. El 27 de abril de 2022, notificada al día siguiente, la solicitud fue declarada Con Lugar.[5]

Así las cosas, el 20 de junio de 2024, notificada el 24 de junio de 2024, el Tribunal de Primera Instancia dictó *Sentencia*, declarando Ha Lugar la *Demanda* presentada por la parte recurrida.[6] Posteriormente, el 29 de julio de 2024, San Carlos

---

[1] Los recursos relacionados son el KLCE202401051 y el KLCE202401250.
[2] Apéndice del recurso de *certiorari*, págs. 1-31.
[3] *Íd.*, págs. 37-39.
[4] *Íd.*, págs. 329-339.
[5] *Íd.*, pág. 344.
[6] *Íd.*, págs. 476-481.

presentó *Moción en Solicitud de Sustitución de Parte, de que se Enmiende el Epígrafe del Caso y Solicitando Ejecución de Sentencia.*[7] Con respecto a la sustitución de parte, solicitó que se sustituyera la parte demandante por Casitas Blancas LLC (en adelante, Casitas), en tanto el pagaré objeto del pleito le había sido transferido.

Atendida la moción, el 30 de julio de 2024, notificada ese mismo día, el tribunal primario la resolvió Con Lugar.[8] Adicionalmente, y en la misma fecha, el foro *a quo* emitió la *Orden de Ejecución de Sentencia y Venta de Bienes.*[9] Luego, el 7 de agosto de 2024, la Secretaría del tribunal *a quo* emitió el *Mandamiento de Ejecución.*[10]

Más adelante, el 16 de septiembre de 2024, Casitas presentó una moción en la que informó que, el pagaré objeto de ejecución había sido negociado a Phalanx Capital Series 20 Real Estate LLC, (en adelante, Phalanx Capital o parte recurrida), por lo que solicitó que se realizara la sustitución de parte correspondiente.[11] El mismo día, notificada el 17 de septiembre de 2024, el foro primario emitió *Orden* autorizando la sustitución solicitada.[12]

Así las cosas, y tras otras varias incidencias procesales, el 21 de enero de 2025, la señora Mesa Sánchez presentó *Moción Urgente bajo la Ley de Instrumentos Negociables y Solicitud de Relevo de Sentencia.*[13] Por medio de esta, adujo que, San Carlos no era un tenedor de buena fe del pagaré descrito en la demanda. Precisó que, San Carlos había adquirido el referido pagaré a sabiendas de que estaba vencido y de que existía una reclamación judicial, lo que lo descalificaba como tenedor de buena fe según las disposiciones de la Ley Núm. 208 de 17 de agosto de 1995, conocida como la Ley de

---

[7] *Íd.*, págs. 487-504.
[8] *Íd.*, págs. 509.
[9] *Íd.*, págs. 505-507.
[10] *Íd.*, págs. 515-517.
[11] *Íd.*, págs. 557-568.
[12] *Íd.*, págs. 596.
[13] *Íd.*, págs. 709-717.

Transacciones Comerciales, 19 LPRA § 4.01 *et seq.* (en adelante, Ley Núm. 208-1995). Añadió que, San Carlos y Phalanx Capital habían promovido un procedimiento de venta judicial ilegalmente.

Como corolario de lo anterior, la peticionaria señaló que el Código Civil de Puerto Rico disponía expresamente que los actos ejecutados en contravención con las disposiciones de ley eran nulos. Añadió que el Alto Foro ya había resuelto que, el tribunal carecía de discreción para denegar una moción de desestimación fundamentada en la nulidad de una sentencia, cuando se demostraba que, en efecto, era nula.

De otro lado, añadió que la mencionada Ley Núm. 208-1995, *supra*, proveía para que, –en circunstancias en que un demandante tomara un instrumento sin cumplir con el requisito de ser tenedor de buena fe–, la parte demandada reclamara su derecho de propiedad o de instrumento, "incluyendo una reclamación para rescindir la negociación y recuperar el instrumento descrito en la demanda".[14] Con todo, la peticionaria solicitó que (1) se declarase con lugar la referida reclamación; (2) el relevo de sentencia y, (3) la desestimación del pleito.

El 20 de febrero de 2025, la parte recurrida presentó su oposición a la referida moción.[15] En primer lugar, indicó que, la moción fue presentada fuera del término de los seis (6) meses que dispone el ordenamiento jurídico. Precisó que, esta fue presentada doscientos once (211) días luego de notificada la *Sentencia* en el pleito.

En segundo orden, señaló que, los argumentos esbozados por la peticionaria no eran suficientes para relevarla de la *Sentencia*. Detalló que, la señora Mesa Sánchez carecía de legitimación activa para solicitar el relevo de sentencia. Ello, toda vez que, esta era parte

---

[14] *Íd.*, pág. 716.
[15] *Íd.*, págs. 734-738.

del pleito únicamente por ser la titular del inmueble objeto de controversia, es decir, que no fue quien adquirió la obligación principal. Añadió que, de existir una defensa efectiva, esta le asistiría a un acreedor hipotecario, en este caso, a la señora Morán Lantigua, y no a un titular registral.

Evaluados los escritos de las partes, el mismo 20 de febrero de 2025, notificada al próximo día, el foro primario emitió *Resolución Interlocutoria*, declarando No Ha Lugar la solicitud de relevo de sentencia.[16]

En desacuerdo, el 27 de febrero de 2025, la peticionaria presentó *Solicitud de Reconsideración*.[17] En lo pertinente, insistió en los argumentos planteados en su solicitud. Por otro lado, adujo que la impugnación de la alegada violación carecía de un término de caducidad. Detalló que en el presente caso, se estaba ante una actuación nula, no solo anulable, por lo que no existía ningún término prescriptivo para presentar la causa de acción. Asimismo, indicó que, la doctrina vigente establecía que, todo acto ejecutado en contra de las disposiciones legales era nulo y, consecuentemente, inexistente e ineficaz, por lo que, no generaba ninguna consecuencia jurídica.

Luego, el 13 de marzo de 2025, Phalanx Capital instó *Oposición a "Solicitud de Reconsideración"*.[18] A grandes rasgos, reprodujo los mismos argumentos esbozados en su oposición a la solicitud de relevo de sentencia.

En esa misma fecha, el Tribunal de Primera Instancia emitió y notificó *Resolución Interlocutoria*, declarando No Ha Lugar la solicitud de reconsideración.[19]

---

[16] *Íd.*, págs. 739-740.
[17] *Íd.*, págs. 741-766.
[18] *Íd.*, págs. 784-788.
[19] *Íd.*, págs. 789-790.

Inconforme aún con la determinación del tribunal primario, el 9 de abril de 2024, compareció ante este foro apelativo la señora Mesa Sánchez mediante recurso de *Certiorari*, en el que esbozó los siguientes señalamientos de error:

A.  Erró el Tribunal *a quo* al declarar No Ha Lugar la Moción Urgente Bajo la Ley de Instrumentos Negociables y la Solicitud de Relevo de Sentencia radicada el 21 de enero de 2025 y al ordenar la continuación de los procedimientos post sentencia en el caso de autos.

B.  Erró el Tribunal *a quo* al descartar, sin fundamento alguno, en sus resoluciones del 20 de febrero de 2025 y 13 de marzo de 2025, respectivamente, la jurisprudencia que dispone que todo acto ejecutado por el demandante en contra de lo que dice la Ley de Transacciones Comerciales es nulo y, como consecuencia, inexistente e ineficaz porque nunca "nació" en derecho y no genera consecuencia jurídica alguna"[.] En virtud de esta jurisprudencia, los planteamientos que hace Phalanx en sus oposiciones del 20 de febrero de 2025 y del 13 de marzo de 2025 son totalmente improcedentes en derecho por haber San Carlos Mortgage LLC, Casitas Blancas LLC y el demandante Phalanx violentando crasamente la Sección 2-302 — Tenedor de Buena Fe (19 L.P.R.A. § 602) de la Ley de Transacciones Comerciales, por lo que, el demandante no cualifica como tenedor de buena fe bajo la Ley de Transacciones Comerciales.

C.  Erró el Tribunal *a quo* al declarar No Ha Lugar a la reclamación de la demandada de derecho de propiedad o de posesión sobre el instrumento, incluyendo una reclamación para rescindir una negociación y recuperar el instrumento y, por consiguiente, la desestimación solicitada por éste.

Junto a su recurso de *Certiorari*, la señora Mesa Sánchez presentó ante este Tribunal una *Moción Urgente Solicitando la Paralización de los Procedimientos en el Tribunal de Primera Instancia bajo la Regla 79 del Reglamento de este Honorable Tribunal*. El 10 de abril de 2025, esta *Curia* emitió Resolución declarándola No Ha Lugar. Adicionalmente, concedimos a la parte recurrida hasta el 21 de abril de 2025, para presentar su posición en torno al recurso de *Certiorari*.

En cumplimiento, el 21 de abril de 2025, la parte recurrida incoó su *Oposición a que se Expida Certiorari Civil*.

Cabe señalar que, al próximo día, el 22 de abril de 2025, la peticionaria presentó *Moción Urgente de Reconsideración y Solicitud de Paralización de los Procedimientos en el Tribunal de Primera Instancia bajo la Regla 79 del Reglamento de este Honorable Tribunal*. En esa misma fecha, este foro revisor emitió *Resolución* declarándola No Ha Lugar.

Así, con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A. *Certiorari*

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009). Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C)   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D)   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E)   Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F)   Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G)   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[20]

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de

---

[20] 4 LPRA Ap. XXII-B, R. 40.

discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**III**

En esencia, la señora Mesa Sánchez sostiene que, el Tribunal de Primera Instancia incidió al declarar sin lugar la solicitud de relevo de sentencia, en tanto entiende que la *Sentencia* dictada en el presente caso es nula. Insiste en que, en instancias en las que una sentencia es nula, el término de seis (6) meses para presentar una solicitud de relevo de sentencia basada en dicha nulidad no aplica. Subraya que en tales casos, el tribunal no tiene discreción para denegarla.

Cónsono a ello, reitera su argumento en cuanto a que, San Carlos no es un tenedor de buena fe por haber adquirido el pagaré objeto de ejecución a sabiendas de se encontraba en mora.

Tras evaluar detenidamente el recurso presentado por la señora Mesa Sánchez, colegimos que, no procede la expedición del auto solicitado. Los señalamientos de error antes reseñados, por los fundamentos aducidos en la petición no pueden activar nuestra jurisdicción discrecional en el caso de autos. La decisión recurrida no es manifiestamente errónea y encuentra cómodo asilo en la sana discreción del Tribunal de Primera Instancia.

Además, la peticionaria tampoco ha logrado persuadirnos de que nuestra abstención apelativa en este momento y sobre el asunto planteado constituiría un rotundo fracaso de la justicia.

Llamamos a la atención que, ciertamente, la Ley Núm. 208-1995, *supra*, es clara al disponer que, quien obtiene un pagaré a sabiendas de que este se encuentra en mora, no se considerará, para

los efectos de la Ley Núm. 208-1995, *supra,* como un tenedor de buena fe. Ahora bien, ello de ninguna manera prohíbe que dicho pagaré pueda venderse, según sugiere la peticionaria.

Adicionalmente, y según plantea la parte recurrida, no podemos perder de vista que en el presente caso, la señora Mesa Sánchez no fue quien adquirió la obligación principal del pagaré objeto de ejecución, por lo que esta carece de legitimación activa para realizar cualquier reclamación relacionada a este.

**IV**

Por los fundamentos que anteceden, se deniega la expedición del recurso de *Certiorari.*

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones